LEE, P.J.,
 

 for the Court:
 

 PROCEDURAL HISTORY
 

 ¶ 1. Clarence Arrington was found guilty in the Circuit Court of Jones County of felony escape. Arrington was sentenced as a habitual offender and ordered to serve five years in the custody of the Mississippi Department of Corrections. The trial court denied Arrington’s motion for a judgment notwithstanding the verdict or, in the alternative, a new trial.
 

 ¶
 
 2.
 
 Arrington now appeals, asserting the following issues: (1) he was deprived of his constitutional right to testify; (2) the State failed to establish that he was a habitual offender; and (3) the indictment failed to allege an essential element of the crime, and the trial court erred in allowing a jury instruction, which constituted an impermissible constructive amendment to the indictment, to be given.
 

 FACTS
 

 ¶ 3. Arrington was brought to the Laurel Police Department for a bond hearing. Officer David Marshall of the Laurel Police Department escorted Arrington to the booking area of the police station. Arring-ton asked if he could smoke a cigarette. Officer Jim Thornhill opened the door to the security area to allow Arrington to smoke. Arrington walked out to the security area, which was at the top of a set of stairs. Officer Thornhill testified that he and Officer Marshall turned to talk to each other, and Arrington ran down the stairs. The escape was captured on surveillance video, which was shown to the jury. Ar-rington was later found hiding in a closet in a nearby residence.
 

 DISCUSSION
 

 I. RIGHT TO TESTIFY
 

 ¶ 4. Arrington argues that he was denied the right to testify on his own
 
 *31
 
 behalf by the trial court and/or his trial counsel. At trial, the following exchange occurred outside the presence of the jury:
 

 [DEFENSE COUNSEL]: I’ve advised you that it’s your decision and your decision alone whether or not you testify in this case; correct?
 

 [ARRINGTON]: Yes, sir.
 

 [DEFENSE COUNSEL]: I’ve advised you that if you do choose to testify you’ll be subject to cross-examination by the district attorney’s office?
 

 [ARRINGTON]: Yes, sir.
 

 [DEFENSE COUNSEL]: And it will be a wide[-]open cross-examination?
 

 [ARRINGTON]: Yes, sir.
 

 [[Image here]]
 

 [DEFENSE COUNSEL]: Do you want to testify in this case?
 

 [ARRINGTON]: Yes, sir.
 

 THE COURT: Okay.
 

 [PROSECUTOR]: He does?
 

 [DEFENSE COUNSEL]: Yes
 

 [PROSECUTOR]: Your Honor, I think [defense counsel] needs to advise him that he’s going to be subject to cross-examination, and ... if he opens the door I will cross-examine him on [his prior conviction] and the particular underlying offense if he starts to allude into it, if he opens the door.
 

 THE COURT: Does he understand that?
 

 [DEFENSE COUNSEL]: Clarence, you understand that if you say anything about the charge of grand larceny where you’re accused [of] stealing a TV or grand larceny where you’re accused of stealing air conditioner compressors, if you mention any of those, the State can cross-examine you about the fact that you’re charged with those offenses?
 

 [ARRINGTON]: Yes, sir.
 

 [DEFENSE COUNSEL]: And they can also cross-examine you about your prior felony convictions if you mention them in your testimony?
 

 [ARRINGTON]: Yes, sir, I understand.
 

 [DEFENSE COUNSEL]: And with all that in mind you still want to testify?
 

 [ARRINGTON]: Yes.
 

 THE COURT: All right. Bring the jury out. You may step down. Are you going to have anymore witnesses, [defense counsel]?
 

 [DEFENSE COUNSEL]: Your Honor, I don’t believe I will.
 

 THE COURT: I’m just trying to get a time frame here.
 

 [DEFENSE COUNSEL]: Your Honor, we’ve reconsidered, and he’s not going to testify....
 

 ¶ 5. Arrington argues that when his counsel announced that he did not want to testify, the trial court should have questioned him on the record again. Arrington cites to
 
 Culberson v. State,
 
 412 So.2d 1184, 1186-87 (Miss.1982), which states:
 

 We suggest to the trial judges of the state that, in any case where a defendant does not testify, before the ease is submitted to the jury, the defendant should be called before the court out of the presence of the jury, and advised of his right to testify. If the defendant states he does not wish to testify, he may not be forced to take the stand; however, if he states that he wants to testify he should be permitted to do so. A record should be made of this so that no question about defendant’s waiver of his right to testify should ever arise in the future.
 

 ¶ 6. Arrington was advised of his right to testify. That is all that is suggested in
 
 Culberson.
 
 We cannot find support for the contention that a defendant should be advised of his right to testify every time he
 
 *32
 
 or she changes his or her mind on whether to testify.
 

 ¶ 7. Further, the facts of
 
 Culberson
 
 are distinguishable from this case. In
 
 Culber-son,
 
 Alvin Culberson argued that his attorney prevented him from testifying.
 
 Id.
 
 at 1186. The Mississippi Supreme Court reversed for an evidentiary hearing after evidence was presented ' that Culberson told the trial judge during the motion for a new trial that he desired to testify.
 
 Id.
 
 Also, Culberson’s attorney admitted that he may have caused some confusion by the way he advised Culberson.
 
 Id.
 
 Arrington was given an opportunity
 
 to
 
 speak after the jury verdict was read. Arrington stated that he felt he had “been railroaded from the whole get
 
 go.”
 
 He went on to say: “That man put the charge on me. He say [sic] he was going to automatically send me to prison from the go.” Arring-ton was referring to a police officer’s statement to him. But the trial court found this immaterial as the officer did not participate in the trial.
 

 ¶ 8. Arrington did not express a desire to testify after his attorney advised the trial court that Arrington had changed his mind, and this issue was not mentioned in the motion for a new trial. We find that the trial court informed Arrington of his right and did not prevent him from testifying. If Arrington’s contention is that his attorney prevented him from testifying, we find this issue better suited for an ineffective-assistance-of-counsel claim. Such an issue is more appropriately raised in a motion for post-conviction relief, if he chooses to do so.
 

 II. HABITUAL-OFFENDER STATUS
 

 ¶ 9. Arrington argues that the State failed to prove that he was a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev.2007).
 

 ¶ 10. Section 99-19-81 states: Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
 

 A bifurcated hearing is required to prove habitual-offender status, and the State must prove the requirements set forth in the statute beyond a reasonable doubt.
 
 Davis v. State,
 
 680 So.2d 848, 851 (Miss. 1996).
 

 ¶ 11. Arrington asserts that the State failed to present evidence of his prior crimes during the sentencing hearing. Prior to trial, the State moved to amend the indictment to reflect that Arrington had been convicted of two previous felonies. At the conclusion of trial, the trial court granted the State’s motion. The sentencing orders from the prior crimes were attached to the motion. The first order sentenced Arrington to serve three years for the crime of grand larceny. The second order sentenced Arrington to serve five years for the burglary of a dwelling. Both sentences were issued in Jones County-
 

 ¶ 12. Arrington argues that it was insufficient that the sentencing orders were attached to the amended indictment. He asserts the State should have offered them as exhibits at the sentencing hearing. No objection was made at trial to Arrington’s
 
 *33
 
 habitual-offender status; thus, Arrington must assert this argument as plain error on appeal.
 
 Brown v. State,
 
 995 So.2d 698, 708 (¶ 21) (Miss.2008). The sentencing orders were included with the amended indictment and were made part of the record on appeal. Even though they were not introduced as exhibits at trial, we find sufficient evidence was presented to establish Arrington’s two prior convictions. This issue is without merit.
 

 III. INDICTMENT
 

 ¶ 18. Finally, Arrington argues that his indictment was fatally defective. An essential element of Arrington’s crime, felony escape, was that Arrington was in custody for a felony arrest or felony conviction. Arrington argues that the indictment did not make clear that the confinement from which he escaped was for a felony arrest or conviction.
 

 ¶ 14. The purpose of an indictment is to put a defendant on notice of the charges against him so that he is able to prepare an adequate defense.
 
 Evans v. State,
 
 916 So.2d 550, 551 (¶ 5) (Miss.Ct. App.2005). “All that is required is that the indictment provide ‘a concise and clear statement of the elements of the crimes charged.’ ”
 
 Id.
 
 at 551-52 (¶ 5) (quoting
 
 Williams v. State,
 
 445 So.2d 798, 804 (Miss.1984)).
 

 ¶ 15. The indictment states that Arring-ton “did willfully, unlawfully, and felo-niously, escape from the Laurel Police Department, in which he was confined and in lawful custody, in violation of Section 97-9-49.” The indictment clearly states that Arrington “feloniously” escaped. The escape is not felonious unless the charge for which the defendant is in custody is a felony. Miss.Code Ann. § 97-9-49 (Rev. 2006). This issue is without merit.
 

 ¶ 16. THE JUDGMENT OF THE JONES COUNTY CIRCUIT COURT OF CONVICTION OF FELONY ESCAPE AND SENTENCE AS A HABITUAL OFFENDER OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JONES COUNTY.
 

 KING, C.J., MYERS, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR.