# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-00855-COA

**SIDNEY KEITH AUSTIN FERGUSON A/K/A**          **APPELLANT**
**SIDNEY KEITH AUSTIN A/K/A SIDNEY KEITH**
**FERGUSON A/K/A SYDNEY FERGUSON**

**v.**

**STATE OF MISSISSIPPI**          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 01/27/2017 |
| TRIAL JUDGE: | HON. JOSEPH H. LOPER JR. |
| COURT FROM WHICH APPEALED: | GRENADA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JOHN THOMAS LAMAR III |
| | MARK KEVIN HORAN |
| | BRADLEY DAVID DAIGNEAULT |
| | TAYLOR ALLISON HECK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | DOUG EVANS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/17/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WESTBROOKS, J., FOR THE COURT:**

¶1. Sidney Keith Austin Ferguson was convicted of touching a child for lustful purposes in violation of Mississippi Code Annotated section 97-5-23 (Rev. 2014) in the Grenada County Circuit Court. After a jury trial, Ferguson was sentenced to fifteen years in the custody of the Mississippi Department of Corrections, with five years suspended and ten years to serve, and placed on five years' probation. The circuit court denied Ferguson's

motion for a judgment notwithstanding the verdict or, alternatively, new trial, and the court dismissed his second motion for a new trial for lack of jurisdiction. Aggrieved, Ferguson appealed to this Court.

## FACTS AND PROCEDURAL HISTORY

¶2. In August 2016, Ferguson appeared before the Grenada County Justice Court on charges of touching a child for lustful purposes. At that time, public defender Neal Marlow was appointed to represent him. On or about December 13, 2016, Ferguson was indicted for one count of touching a child for lustful purposes. Ferguson appeared before the Grenada County Circuit Court, and the same court-appointed attorney was ordered to continue his representation. On January 26, 2017, after a two-hour jury trial, Ferguson was convicted and sentenced to fifteen years, with five years suspended and ten years to serve, and placed on five years' probation. Ferguson was also required to register as a sex offender. On January 30, 2017, Ferguson filed a motion for a judgment notwithstanding the verdict or, alternatively, a new trial, arguing that the verdict was contrary to the law and the weight of the evidence. The circuit court denied his motion.

¶3. After the denial of Ferguson's motion, Marlow withdrew, and Ferguson retained new counsel. With new counsel, Ferguson filed a notice of appeal with the Mississippi Supreme Court on February 17, 2017. After the notice was filed, Ferguson's new counsel withdrew, and he obtained a third attorney. With his third attorney, Ferguson filed a second motion for a new trial on June 27, 2017, in the Grenada County Circuit Court, alleging ineffective assistance of counsel by his trial attorney. The motion specifically alleged that his court-

2

appointed counsel had told him that he provides better representation for his paid clients than his court-appointed clients. Ferguson also asserted that the appointed counsel had told Ferguson he needed to be paid to properly represent him. These issues were not raised during the course of the trial proceedings. The circuit court dismissed Ferguson's motion, stating that the court no longer had jurisdiction over the case once Ferguson had filed his notice of appeal.

¶4. On appeal, this Court granted oral argument, and Ferguson only addressed his ineffective-assistance-of-counsel allegations against his court-appointed attorney.[1] Upon hearing the arguments of Ferguson and the State, this Court suspended its rules under Rule 2 of the Mississippi Rules of Appellate Procedure,[2] held the appeal in abeyance, and remanded the case back to the circuit court for a limited ruling on Ferguson's second motion for a new trial. On limited remand, the circuit court denied Ferguson's motion for a new trial. After hearing testimony from Ferguson, Marlow, and others, the circuit court found no merit to any of Ferguson's ineffective-assistance-of-counsel allegations. Now that this

---

[1] Ferguson effectively abandoned his first motion for a new trial alleging the verdict was against the overwhelming weight of the evidence. He did not argue it in his appellate brief, and he did not mention it during oral argument. *Arrington v. State*, 267 So. 3d 753, 756 (¶8) (Miss. 2019); *see* M.R.A.P. 28.

[2] Mississippi Rule of Appellate Procedure 2(c) states:

Suspension of Rules. In the interest of expediting decision, or for other good cause shown, the Supreme Court or the Court of Appeals may suspend the requirements or provisions of any of these rules in a particular case on application of a party or on its own motion and may order proceedings in accordance with its direction. The time for taking an appeal under Rules 4 or 5 may be extended in criminal and post-conviction cases, but not in civil cases.

3

matter is appropriately before this Court, we will address Ferguson's grievances.

## STANDARD OF REVIEW

¶5. This Court has held that "[w]hen examining a claim of ineffective assistance of counsel, we conduct a de novo review of the record as a whole to determine whether there is a deficiency in the trial counsel's performance, and if so, whether the deficiency prejudiced the defendant." *Blunt v. State*, 55 So. 3d 207, 210 (¶12) (Miss. Ct. App. 2011). In reviewing the denial of a motion for a new trial, we must "accept as true the evidence which supports the verdict and to reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. A new trial will not be ordered unless the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an 'unconscionable injustice.'" *Nelson v. State*, 222 So. 3d 318, 322-23 (¶9) (Miss. Ct. App. 2017) (citation and internal quotation marks omitted).

## DISCUSSION

### I. Sixth Amendment Right to Counsel

¶6. Ferguson asserts that he was denied his Sixth Amendment right to counsel because his trial counsel was constitutionally ineffective. The Mississippi Supreme Court generally holds that "ineffective-assistance-of-counsel claims are more appropriately brought during post[-]conviction proceedings." *Williams v. State*, 228 So. 3d 949, 952 (¶12) (Miss. Ct. App. 2017). But the Supreme Court and this Court have held that "an ineffective-assistance-of-counsel claim can be addressed on direct appeal when (1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is

4

adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge." *Id.* (internal quotation marks omitted). To succeed on an ineffective-assistance-of-counsel claim, the "defendant must prove that his attorney's performance was deficient, and that the deficiency was so substantial as to deprive the defendant of a fair trial." *Id.* at (¶13); *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984). The defendant must show that the deficiency prejudiced his defense. *Nelson*, 222 So. 3d at 322 (¶5). Under *Strickland*, "[t]he touchstone for testing a claim of ineffectiveness of counsel must be 'whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Irby v. State*, 893 So. 2d 1042, 1048 (¶25) (Miss. 2004) (quoting *Strickland*, 466 U.S. at 686).

¶7.     The crux of Ferguson's claim states that his court-appointed public defender told him that he provides better representation to his paid clients versus his court-appointed clients, and, as a result of Ferguson not paying him, he did not provide Ferguson with adequate representation. This Court believed that this claim potentially gave rise to a claim of ineffectiveness of constitutional dimensions such that a limited remand was necessary to give the circuit court an opportunity to fully address it.

¶8.     The trial judge conducted an evidentiary hearing on or about May 16, 2019.[3] He heard testimony from Ferguson, Marlow, and Renae Franklin, Ferguson's former fiancée.

---

[3] During the hearing on limited remand, Ferguson raised five additional allegations for the first time, including his trial counsel's alleged failure to introduce certain evidence, failure to make a proffer of certain testimony, and failure to raise claims under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Batson v. Kentucky*, 476 U.S. 79 (1986). These issues were outside the scope of the limited remand ordered by this Court and are not ripe for this Court's review.

According to the record, Ferguson contacted Marlow once he was served with his indictment in December 2016. Renae testified that during a meeting for trial preparations, Marlow told them his paying clients got better representation than court-appointed clients. Ferguson admitted a tape recording of a conversation he had with Marlow to support his assertion that Marlow attempted to request payment. During the recording, Marlow returned Ferguson's phone call and seemingly did not remember him or any previous conversation with him. During the phone call, Marlow did say, "Until you hire me, I'm not really on the case," and "I don't even make a mental note until somebody pays me some money." Both Marlow and Ferguson laughed, and Ferguson said, "I don't know how the whole court appointed thing works." The tape also reveals that Marlow could not find a list of names of people who were appointed to him, and he asked Ferguson when did his case come up before the city court. During the conversation, Marlow conveyed to Ferguson that he would be glad to represent him but only if he paid. The two even discussed a retainer fee. At the hearing, Marlow vehemently denied the claims made by Ferguson and Renae.

¶9. At the evidentiary hearing, Ferguson testified that he did not advise Marlow that he had been previously appointed by the justice court to represent him. During cross-examination, Ferguson admitted that he had no other recording of Marlow saying anything about getting paid. The circuit court questioned Ferguson after he rested his case:

| [THE COURT]: | But I mean, you know, it, to me, sounds like that he thought you were somebody that was just calling facing indictment and arraignment wanting to hire him. Is that what you thought? |
|---|---|
| THE DEFENDANT: | It does sound that way. You are right. |

| | |
|---|---|
| [THE COURT]: | So, you know, you made a big issue about him asking you for money after he was appointed, but it didn't sound like he even realized that he was your lawyer to me. |
| [THE DEFENDANT]: | I don't think he realized he was. And in addition to that, I mean he knows of me. He knew my, my name. He knew why I was calling. To me it just seemed like, you know, Austin, if you'd have give me money, we can get right on this. |
| [THE COURT]: | But that -- he didn't say that on the phone call or anything. As I say, it sounded like he was just -- in fact, even, you know, had gotten a stack of indictments and had looked through them and I mean based on -- |
| [THE DEFENDANT]: | Yeah. |
| [THE COURT]: | -- what it sounds like from the conversation, that, that he absolutely didn't know anything about you or your case or anything else when you were talking. |
| [THE DEFENDANT]: | He has made it clear in his office, you know, that he would have remembered if I was paying him. I just -- |
| [THE COURT]: | I am talking about on this phone call in December. |
| [THE DEFENDANT]: | Yes, sir. You are right. You are right. On the phone call, yes, it, it could go both ways, I guess, but I understand your point. |
| [THE COURT]: | You are thinking that he probably didn't know on the 19th that he had been appointed. |
| [THE DEFENDANT]: | I do think you are right. It's possible. |

¶10. Based on the evidence presented, the circuit court found that Marlow did not

7

recognize Ferguson's name and mistakenly thought that Ferguson called seeking to hire him. The circuit court went on to find that Ferguson, at no time, previously advised counsel that he had been appointed to represent him. The circuit court weighed the credibility of the witnesses and found Marlow's testimony to be more credible. We find this issue is without merit.

¶11. The circuit court found that Marlow did not engage in impermissible conduct relative to him allegedly attempting to obtain money from Ferguson even though he was court appointed. Further, the trial record shows that Ferguson's trial counsel appeared with him during his justice court and circuit court proceedings, called a witness during trial, cross-examined three witnesses, and filed the first motion for a new trial. The circuit court also found that Marlow had no control over the length of the trial. We agree with the circuit court and find that Ferguson has not shown that his trial counsel was deficient.

¶12. In addition to Ferguson unsuccessfully establishing Marlow's conduct as deficient, he also failed to show how the deficiency prejudiced him. Ferguson was convicted of touching a child for lustful purposes. The evidence at trial established that Erin,[4] age nine, was at home with her little brother and Ferguson, who was babysitting them while her mother was at work. Erin testified that after a bath she went to her bedroom to get a toy for her little brother. When she got to her room, Ferguson was on the bed with his pants and underwear pulled down. Erin testified that he grabbed her hand and forced her to touch his "privates." According to Erin, that was not the first time, as it had happened on another occasion in the

---

[4] A pseudonym is used to protect the minor victim's identity.

living room. Officer Sonja Willis, an employee of the Grenada County Sheriff's Department, interviewed Erin and testified that based on her experience, she did not believe she was coached. Erin's grandmother testified for the defense. Although she said Erin did not say that Ferguson made her do anything, she did testify that Erin told her that when she went into the bedroom, Ferguson was on the bed "helping hisself [sic]." After hearing the evidence, the jury found Ferguson guilty. In light of the evidence presented at trial and during the limited-remand hearing, Ferguson failed to show how Marlow's conduct affected the outcome of his trial.

¶13. Notwithstanding, Ferguson asks this Court to apply the law in *Kiker v. State*, 55 So. 3d 1060 (Miss. 2011), and find that prejudice to his defense can be presumed based on his trial counsel's failure to show "undivided loyalty." In *Kiker*, the Mississippi Supreme Court found that the "constitutional guarantees of due process of law require undivided loyalty of defense counsel," and that representation by an attorney with an actual conflict of interest is presumptively prejudicial and results in "ineffective assistance of counsel as a matter of law," unless the client knowingly and intelligently consented to the conflict. *Id.* at 1065-66 (¶¶13-16). *Kiker* is not analogous to the present case. The defense attorney in *Kiker* had concurrent representation with a State's witness, and the defendant did not waive that conflict of interest. *Id.* at 1064 (¶¶7, 9). The court held that once a conflict of interest is demonstrated, a showing of specific prejudice is not necessary to establish a claim of ineffective assistance of counsel. *Id.* at 1066 (¶16). If an attorney tried to obtain money from a court-appointed client to provide "better" legal services, that may demonstrate an actual conflict of interest.

9

However, Ferguson's own testimony deflates that contention.

¶14. We agree with the circuit court's finding that Ferguson's trial counsel was not constitutionally ineffective. This issue is without merit.

## II. Right to Testify

¶15. Ferguson also asserts that he was denied the right to testify in his own defense. "The denial of the right of an accused to testify is a violation of his constitutional right regardless of whether the denial stems from the refusal of the court to let a defendant testify . . . or whether the denial stems from the failure of the accused's counsel to permit him to testify." *Culberson v. State*, 412 So. 2d 1184, 1186 (Miss. 1982) (citing Miss. Const. art. 3, § 26). The Mississippi Constitution grants the accused in all criminal proceedings the "right to be heard by himself . . . ." Miss. Const. art. 3, § 26.

¶16. However, the record does not support Ferguson's claims of being denied this right. During his trial, the circuit court clearly inquired whether Ferguson was aware that he had the right to testify, and Ferguson responded in the affirmative.

> BY THE COURT: . . . [Y]ou've got the right to testify as a witness in this case. Do you understand that?
>
> BY THE DEFENDANT: Yes, sir.
>
> BY THE COURT: And you've got the right not to testify if you choose not to.
>
> BY THE DEFENDANT: Yes, sir.
>
> BY THE COURT: Whether you testify or not, it's strictly your decision and yours alone. Do you understand that?

10

| | |
|---|---|
| BY THE DEFENDANT: | Yes, sir. |
| BY THE COURT: | So if your lawyer wanted you to testify and you didn't want to, you couldn't be forced to. By the same token, if you wanted to testify and he said, "I don't think you should," you could override his judgment and testify. |
| BY THE DEFENDANT: | All right. |
| BY THE COURT: | And so if the situation were to arise where you want to testify, then you need to make that known to the Court. |
| BY THE DEFENDANT: | Yes, sir. |

¶17.    Ferguson, however, states that his trial counsel did not advise him that he could testify in his own defense. He avers that Marlow told him that he did not need to testify because there was nothing he could offer other than simply denying the allegations. However, the record does not demonstrate that Ferguson ever made his desire to testify known to the court even after the court told him he could, contrary to the advice of counsel. *See Arrington v. State*, 69 So. 3d 29, 31 (¶4) (Miss. Ct. App. 2011).

¶18.    In *Arrington*, the defendant vacillated on deciding whether to testify. *Id.* Outside of the presence of the jury, Arrington took the stand, and his defense counsel questioned him on the record about his right to testify. *Id.* Arrington had initially wanted to testify. *Id.* The circuit court asked his attorney if Arrington understood he would be subject to cross-examination. *Id.* Arrington declared he did and still wanted to testify. *Id.* After the judge told him to step down from the witness stand and ordered the jury to return, Arrington's defense counsel stated to the court, "We've reconsidered and he's not going to testify." *Id.*

11

Arrington claimed that when his attorney told the court he was not going to testify, the circuit court should have questioned him on the record again. *Id.* at (¶5). This Court held that the circuit court was under no obligation to advise the defendant of his right to testify a second time after the defendant changed his mind and indicated that he did not want to testify, and the defendant did not express a desire to testify after defense counsel indicated to the court that the defendant had decided not to testify at trial. *Id.* at (¶6). The nexus between *Arrington* and Ferguson is the defendant's failure to express to the court a desire to testify in his own defense. Accordingly, we find this issue without merit.

## CONCLUSION

¶19. In finding that Ferguson failed to establish that he received ineffective assistance of counsel or that he was not advised of his right to testify, we affirm the conviction and sentence and the circuit court's decision denying the post-trial motions.

¶20. **AFFIRMED.**

**BARNES, C.J., GREENLEE, TINDELL, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR. CARLTON, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. J. WILSON, P.J., AND C. WILSON, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**