# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-00828-COA

JOHNNY STRICKLAND                                                        APPELLANT

v.

STATE OF MISSISSIPPI                                                       APPELLEE

DATE OF JUDGMENT:              04/10/2019
TRIAL JUDGE:                   HON. MICHAEL M. TAYLOR
COURT FROM WHICH APPEALED:     PIKE COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:       OFFICE OF STATE PUBLIC DEFENDER
                               BY: MOLLIE MARIE McMILLIN
                               JOHNNY STRICKLAND (PRO SE)
ATTORNEY FOR APPELLEE:         OFFICE OF THE ATTORNEY GENERAL
                               BY: BARBARA WAKELAND BYRD
DISTRICT ATTORNEY:             DEE BATES
NATURE OF THE CASE:            CRIMINAL - FELONY
DISPOSITION:                   AFFIRMED - 06/16/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

## BEFORE CARLTON, P.J., GREENLEE AND McCARTY, JJ.

## McCARTY, J., FOR THE COURT:

¶1.     Johnny Strickland was convicted of fondling his granddaughter. Finding no arguable issues on appeal, his appellate counsel filed a brief pursuant to *Lindsey v. State*, 939 So. 2d 743 (Miss. 2005). Strickland subsequently filed his own supplemental pro se brief raising a number of issues surrounding his conviction and sentence.

¶2.     The Court finds no other arguable issues after carefully reviewing the record. There is also no merit to Strickland's pro se assignments of error. Accordingly, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶3.     Captain Brian Mullins was off duty when he responded to an emergency at Strickland's house.  On his arrival, Captain Mullins found Strickland sitting on his porch with a twelve-gauge shotgun.   Strickland told Captain Mullins that he had hurt his granddaughter, M.L., and needed to go to jail.[1]  Captain Mullins obliged and took Strickland to the Pike County Sheriff's Department.  There, Strickland signed a waiver-of-rights form before being interviewed by Officer Chris Bell.

¶4.     Officer Bell had previously investigated Strickland after receiving reports from Child Protection Services that he had allegedly sexually abused his granddaughter.  M.L. is one of three grandchildren who came to live with him when their mother was unable to care for them.  Strickland and his wife, Sue, raised the children together until Sue's death.  The sexual abuse began three to four weeks after Sue's passing.

¶5.     Strickland was arrested, and a grand jury indicted him for one count of fondling a child when M.L. was between the ages of fifteen and seventeen.[2]  Prior to trial, the trial court granted Strickland's motion and entered an order that a mental evaluation be performed.  The psychiatrist who conducted the evaluation found that Strickland was "competent to stand trial and [was] able to aid and assist his attorney . . . ."  A competency hearing followed where the trial court agreed with the evaluator and found that Strickland was competent to stand trial.

¶6.     During trial, letters that Strickland had written to one of the investigating officers were admitted into evidence.  In the letters, Strickland wrote that he had gotten tired of M.L.

_____

[1] We use initials to protect the identity of minors.

[2] Strickland was also indicted for one count of sexual battery, but the charge was dropped before trial.

2

not locking the bathroom door and warned her that next time she left the door unlocked he would "grab something." Several weeks later, when M.L. forgot to lock the bathroom door, Strickland made good on his threat and "cup[p]ed her bre[a]st in [his] hands."

¶7.     Strickland's letters also explained his method of dissuading M.L. from smoking. He told M.L. that "bad habits make you do stupid stuff" and that the "only way to get [a] pack [of cigarettes] was to flash [him]." When M.L. eventually did ask Strickland for cigarettes, he told her to "remember [their] deal." Strickland said she then "caught her nightgown, at the bottom & raised it over her head." The "deal" continued until Strickland's second wife made him stop.

¶8.     M.L. also testified at trial. She stated that the first incident of abuse happened when she went with Strickland to check on a deer stand. After checking on the stand, Strickland raised M.L.'s shirt and touched her breasts with his hands and mouth. He then pulled down her pants and touched her vagina. During the incident, M.L. cried and asked Strickland to stop.

¶9.     M.L. testified that the inappropriate touching occurred on at least five other occasions. She also stated that Strickland would often walk in while she was in the bathroom and start tickling her until she let go of her towel. During these intrusions, Strickland would touch M.L.'s breasts and vagina.

¶10.    After the State presented its case-in-chief, Strickland moved for a directed verdict, but the motion was overruled. The jury found Strickland guilty of touching a child for lustful purposes. The trial court sentenced Strickland to serve fifteen years in the custody of the

3

Mississippi Department of Corrections (MDOC) and ordered him to pay a $5,000 fine and all court costs. Following the sentence, Strickland's attorney submitted a motion for a JNOV or a new trial. The motion was overruled.

¶11. Strickland's court-appointed counsel filed an appellate brief pursuant to *Lindsey*. His counsel stated that he had scoured the record and could not find any arguable issues for appeal. Strickland was given forty days to file a pro se supplemental brief. Strickland submitted his brief and raised a number of issues.

**ANALYSIS**

¶12. Our Supreme Court has implemented a "procedure to govern cases where appellate counsel represents an indigent criminal defendant and does not believe his or her client's case presents any arguable issues on appeal." *Lindsey*, 939 So. 2d at 748 (¶18). First, appellate counsel "must file and serve a brief in compliance with Mississippi Rule of Appellate Procedure 28(a)(1)-[(5),(8)]." *Id*. Counsel must certify in her brief "that there are no arguable issues supporting the client's appeal, and he or she has reached this conclusion after scouring the record thoroughly, specifically examining: (a) the reason for the arrest and the circumstances surrounding the arrest; (b) any possible violations of the client's right to counsel; (c) the entire trial transcript; (d) all rulings of the trial court; (e) possible procedural misconduct; (f) all jury instructions; (g) all exhibits, whether admitted into evidence or not; and (h) possible misapplication of the law in sentencing." *Id*.

¶13. "Counsel must then send a copy of the appellate brief to the defendant, inform the client that counsel could find no arguable issues in the record, and advise the client of his or

4

her right to file a pro se brief." *Id*.

¶14. "Should the defendant then raise any arguable issue or should the appellate court discover any arguable issue in its review of the record, the court must, if circumstances warrant, require appellate counsel to submit supplemental briefing on the issue, regardless of the probability of the defendant's success on appeal." *Id*.

¶15. Here, appellate counsel stated that she "diligently searched the procedural and factual history of this criminal action and scoured the record searching for any arguable issues . . . [and] found none." Counsel also certified that she considered and reviewed all of the elements required by *Lindsey*. She then confirmed that she submitted a copy of the brief to Strickland and informed him that she could not find any arguable issues in the record and that he had a right to file a pro se brief. The State agreed and requested that Strickland's conviction be affirmed.

¶16. Strickland filed a pro se supplemental brief with a list of issues challenging his conviction. However, Strickland failed to cite any legal authority, which bars his assignments of error. M.R.A.P. 28(a)(7); *see also Hill v. State*, 215 So. 3d 518, 524 (¶10) (Miss. Ct. App. 2017). Nonetheless, we will review his arguments.

## I. The sentence of fifteen years was within the statute.

¶17. Strickland challenges his sentence on two grounds. First, he argues that his fifteen-year sentence exceeded his life expectancy. Second, he argues that he should have received a more lenient sentence because of his lack of a criminal history.

¶18. "[S]entencing is within the complete discretion of the trial court and not subject to

5

appellate review if it is within the limits prescribed by statute." *Carson v. State*, 161 So. 3d 153, 156 (¶7) (Miss. Ct. App. 2014). "As a general rule, a sentence that does not exceed the maximum period allowed by statute will not be disturbed on appeal." *Id.*

¶19. Strickland was convicted under Mississippi Code Annotated section 97-5-23(2) (Rev. 2014) for feloniously fondling a child under the age of eighteen while occupying a position of trust. The punishment for fondling a child is commitment "to the custody of the State Department of Corrections [for] not less than two (2) years nor more than fifteen (15) years . . . ." Miss. Code Ann. § 97-5-23(2).

¶20. This Court has previously held that a sentence of fifteen years for fondling did not exceed the life expectancy of a sixty-six-year-old defendant. *Ivey v. State*, 134 So. 3d 796, 798 (¶8) (Miss. Ct. App. 2013); *see also Brunet v. State*, 282 So. 3d 666, 668 (¶6) (Miss. Ct. App. 2019) (holding that seventy-six-year-old defendant's fifteen-year prison sentence for sexual battery and molestation of minor children was not illegal despite his argument that the sentence exceeded his life expectancy).

¶21. Here, Strickland claims that because he is sixty-five years old and has over thirteen years left of his sentence, the sentence exceeds his life expectancy. He argues that he has a lower-than-average life expectancy because "men & women in [his] family seldom live past 75 years." However, Strickland fails to provide any evidence beyond this conclusory assertion to support his claim, which was not presented to the trial court for review. Pursuant to *Ivey* and *Brunet* we affirm that the sentence is not excessive.

¶22. Because Strickland's sentence was within the statute and "[s]tatutorily provided

6

maximum and minimum sentences are not an abuse of discretion," we find no error. *Phillips v. State*, 285 So. 3d 685, 691 (¶23) (Miss. Ct. App. 2019), *cert. denied*, 284 So. 3d 754 (Miss. 2019).

**II.** **Strickland is procedurally barred from raising objections to Captain Mullins' testimony for the first time on appeal.**

¶23. Strickland asserts as error that portions of Captain Mullins' testimony at trial were inaccurate. He categorizes his assertions as two separate issues, but for the sake of brevity we will address them together.

¶24. First, Strickland claims Captain Mullins' statement that he had asked to be taken to jail was false. He claims he had actually told Captain Mullins that his wife had just left him and that he needed help. Second, Strickland argues that he was not married to his cousin and that Captain Mullins should not have been allowed to testify that he was. At trial, Captain Mullins read the following from the incident report: "CALLED & SPOKE WITH BRIAN ON THE PHONE & HE STATED THAT THE MALE SUBJ[ECT] WAS MARRIED TO HIS COUSIN & SHE LEFT HIM."

¶25. Critically, both Captain Mullins' testimony and the incident report were admitted into evidence absent any objection from Strickland. "[I]t is elemental that a trial judge cannot be placed in error on a matter never presented to him for decision." *Hampton v. State*, 148 So. 3d 1038, 1041 (¶9) (Miss. Ct. App. 2013). This issue is procedurally barred because Strickland did not properly preserve it for appeal by an objection at trial.

¶26. Even if it were not barred, our Supreme Court has previously clarified "that neither [the Supreme] Court nor the Court of Appeals ever acts as 'juror' on direct appeal." *Little*

7

*v. State*, 233 So. 3d 288, 291 (¶15) (Miss. 2017). "We do not make independent resolutions of conflicting evidence." *Id*. at 292 (¶20). "Nor do we reweigh the evidence or make witness-credibility determinations." *Id*. "We sit as an appellate court, and as such are ill equipped to find facts." *Id*. at 291 (¶15). "Even if we wanted to be fact finders, our capacity for such is limited in that we have only a cold, printed record to review." *Id*.

¶27. Strickland had the opportunity to either submit evidence contradicting Captain Mullins' testimony or to testify himself. He chose not to do so. Strickland cannot now attempt to relitigate the facts of his case on appeal.

¶28. For these reasons, the assignments of error do not have merit.

### III. Strickland is procedurally barred from raising issues to the waiver-of-rights form for the first time on appeal.

¶29. Strickland challenges the validity of the waiver-of-rights form he signed before the interview with Officer Bell. He claims that because he did not have his glasses, he was unable to read the form and was therefore not aware of what he was signing. However, this issue was never raised at trial.

¶30. "Issues raised for the first time on appeal are procedurally barred from review as they have not been first addressed by the trial court." *Griffin v. State*, 824 So. 2d 632, 635 (¶7) (Miss. Ct. App. 2002). "A trial judge will not be found in error on a matter not presented to him for decision." *Hampton v. State*, 148 So. 3d 1038, 1041 (¶9) (Miss. Ct. App. 2013).

¶31. Because Strickland never raised this issue at trial, the trial court was never given the opportunity to address it. Therefore, there are no relevant findings or rulings for this Court to review on appeal. Strickland's failure to raise this issue at trial bars him from doing so for

the first time on appeal. This issue is without merit.

### IV. Strickland was not denied his right to testify at trial.

¶32. Strickland appears to argue that he was denied his right to testify in his own defense. Specifically, he states that he "felt sure that once the jury heard [his] side that [he] would have been able to convince at least one or two jurors of [his] [innocence]." Strickland states that his defense counsel advised him against testifying.

¶33. The Mississippi Constitution grants the accused in all criminal proceedings the "right to be heard by himself . . . ." Miss. Const. art. 3, § 26. In Mississippi, "[i]f the defendant states he does not wish to testify, he may not be forced to take the stand; however, if he states that he wants to testify he should be permitted to do so." *Culberson v. State*, 412 So. 2d 1184, 1186 (Miss. 1982). "A record should be made of this so that no question about defendant's waiver of his right to testify should ever arise in the future." *Id.* at 1186-87. Nonetheless, the trial court is not obligated to advise a defendant of "his right to testify every time he or she changes his or her mind on whether to testify." *Arrington v. State*, 69 So. 3d 29, 31-32 (¶6) (Miss. Ct. App. 2011).

¶34. Further, "[w]hen defense counsel rests without calling the defendant and the defendant does not complain that he wants to testify, the defendant's silence is prima facie proof that counsel was following the defendant's wishes." *Jenkins v. State*, 284 So. 3d 862, 873 (¶28) (Miss. Ct. App. 2019).

¶35. Strickland initially told the court that he wished to testify on his own behalf. The State then notified defense counsel that if Strickland took the stand, the State would question

9

him about the conversation he had with his grandson the night before. During that conversation, Strickland asked his grandson to tell M.L. not to testify.[3] After consulting with his attorney and learning that testifying could subject him to witness-tampering charges, Strickland changed his mind about testifying and did not take the stand.

¶36. The trial court conducted a *Culberson* colloquy and found the defendant made the informed choice not to testify. Strickland's defense counsel then rested its case without calling Strickland to the stand.

¶37. Strickland now wishes to reverse course on appeal, arguing the jury would have acquitted him if they had heard the "reasons" why his daughter and granddaughter reported him to the police, since he says they wanted to move into his house and live off of his Social Security checks.

¶38. Regardless of his argument on appeal, Strickland was counseled that he had the right to testify, and chose not to do so. It is apparent that Strickland consciously chose this path as an act of self-preservation to avoid possible felony charges for tampering with a witness. The trial court followed precedent and confirmed the defendant's decision not to testify. This assignment of error does not have merit.

## V. The birthplace of the defendant does not impact the conviction.

¶39. For his final issue, Strickland argues his "Notice of Criminal Disposition" is incorrect. The document states that Strickland was born in Kentwood, Louisiana, and he states he was

---

[3] In his supplemental brief, Strickland admits that he tried to stop his granddaughter's testimony: "[T]he night before my trial, I was on the phone at Pike Co. Jail talking with my 19 year old grandson an[d] I told him that if [M.L.] really wanted to help me she should not testify."

actually born in Independence, Louisiana.

¶40.    This argument was not presented to the trial court for review, so it is procedurally barred.  Even if the document is incorrect, any error in listing the defendant's birthplace is not material to the charges and would not have changed the outcome of his trial or impacted his sentence.  *Cf. Massey v. State*, 131 So. 3d 1213, 1219 (Miss. Ct. App. 2013) (denying claim for postconviction relief based on an allegation that the date of a plea bargain was changed, since it was not material to the charges).  As a result, we affirm.

## CONCLUSION

¶41.    The conviction and sentence of the defendant are affirmed.

¶42.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE AND C. WILSON, JJ., CONCUR.**